## Snyder v. McLanahan, Appellant.

*Assignment for creditors—Assignee's sale—Announcement as to dower interest.*

Where an assignment for creditors is made without joinder of the wife, and subsequently the assignor dies, and thereafter the assignee sells the real estate under an order of court, and at the sale the widow of the assignor announces publicly, and in the presence of the assignor's creditors that she claims her dower, and the attorney for the assignee announces

that bidders should "pay no attention to the dower notice as the purchaser would receive a good title, and free of all liens and incumbrances whatsoever," a purchaser who has given a mortgage to the assignee for a portion of the purchase money cannot subsequently in proceedings to foreclose the mortgage aver that he is not liable, nor claim that he was entitled to retain the fund represented by the mortgage to protect himself against the dower.

In such a case the purchaser is bound by the recorded deed of assignment showing that the wife did not join, and by the widow's announcement at the sale. He cannot assume that the assignee's counsel had any power to make the announcement which he did, or that it was more than the opinion of the attorney as to whether the sale would divest the widow's interest; nor can he assume that the silence of the creditors could be construed into an agreement that the funds to which they were entitled should be applied by the assignee to the payment of the dower.

Argued April 22, 1902. Appeal, No. 19, Jan. T., 1902, by defendant, from order of C. P. Blair Cq., March T., 1900, making absolute a rule for judgment for want of a sufficient affidavit of defense, in case of John M. Snyder, Assignee of Archibald McFadden, v. J. King McLanahan, Jr. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Scire facias sur mortgage.

Rule for judgment for want of a sufficient affidavit of defense. Before JOHN STEWART, P. J., specially presiding.

The affidavit of defense was as follows:

In 1877 Archibald McFadden made a deed of assignment for the benefit of creditors to A. S. Morrow. Barbara McFadden, wife of said Archibald McFadden, did not join in the execution of said deed. On the    day of    , 1887, said Archibald McFadden died intestate, leaving to survive him his widow, said Barbara, and three children. From the execution of said deed of assignment down to 1896 said assignee sold a number of pieces of land of said estate, and in each instance, he either had the widow join in his deed and afterwards paid her money from the funds of the estate, as shown by his account, or he sold the property and allowed the one third of the purchase money to remain in the land to secure the dower and the widow to this day is receiving interest on such third. At no time have the creditors objected either to his said payments to said Barbara McFadden or his method of sale. In October, 1895, there remained, among other property, unsold in said assigned

estate, a farm situate in Frankstown township, Blair county, sometimes called the "McFadden Farm." At that time the only creditors of said assigned estate were Mary and William Brooke and S. P. McFadden's estate. The Brooke's claim was a first mortgage on said farm, the same having been given for purchase money. The claim of the S. P. McFadden estate was a judgment and was the next lien to said mortgage. Judgment had been obtained on said mortgage and on September 13, 1895, an execution was issued. On October 4, 1895, that execution was stayed, and on that date the heirs of Archibald McFadden and H. A. McFadden, Esq., executor of S. P. McFadden, petitioned the court of common pleas of Blair county for an order to be granted the assignee to sell. On March 7, 1896, the assignee held his sale. Before the auctioneer began crying the sale, notice was given by said Barbara McFadden that she was claiming a dower in the farm. Hon. A. S. Landis, who was the attorney for the assignee and who had entire charge of the sale, after the giving of the dower notice, arose, and announced that bidders would pay no attention to the dower notice as the purchaser would receive a good title and free of all liens and incumbrances whatsoever. Both H. A. McFadden, executor of S. P. McFadden, and the representatives of said Brooke mortgage were present when said notice and announcement were made, and made no protest. On the contrary their conduct conclusively showed that the understanding was that the purchaser was not to pay for the dower in addition to his bid, but that he would be protected. Said H. A. McFadden became a competitor with the purchaser, W. P. Smith who was bidding for defendant, and the farm was bid to $9,000, less $10.00, when the farm was knocked down to defendant's agent.

After the sale, defendant paid one third of the purchase money to the assignee, and the assignee executed his deed to defendant's agent. The deed from the assignee was in fee simple for the land and not in the form of the ordinary assignee's deed. At the time of the said sale, nor at the time of the issuing of this scire facias, had the widow's dower ever been assigned to her. On September 17, 1896, the banking firm of Gardner & Morrow Company failed, and it was discovered that the firm and the partners were all insolvent. A. S. Morrow was a member of said banking firm, and in said failure the

first third of the purchase money was lost. A few months after said failure, said A. S. Morrow died, and in April, 1897, said Honorable A. S. Landis died. As there was no assignee to receive the second payment defendant paid it into court, and said H. A. McFadden, executor, claimed that money, on the ground that the assignee's sale did not divest the said Brooke mortgage, and that it was still a lien on the farm. The court of common pleas of Blair county determined that the Brooke mortgage was discharged, and the Supreme Court affirmed that judgment, in 191 Pa. 624. At the time defendant paid the second payment of purchase money into court, was the first intimation he had that anyone claimed that he was to pay more than the price at which the farm was knocked down. Defendant by that time had not only paid the first third which was lost, but had put valuable improvements on the farm, so that it was impossible for him to have the sale set aside. The farm was sold for not only its full price, but brought, according to the undisputed evidence, in the aforesaid trial, $1,500 more than any witness on either side was willing to appraise it.

The present mortgage was given to John M. Snyder, assignee of Archibald McFadden, successor to A. S. Morrow, and stands for the last third of the purchase money of the farm. The widow has demanded her dower and is a party in this suit. Upon the foregoing state of facts the mortgage should remain to stand for the dower as a protection to the purchaser, the defendant. The interest to be paid the widow during her life, and at her death the principal to be paid to the assignee; the widow has consented to this. The present assignee admits he knows nothing about the sale, and has called the aforesaid creditors to be the real plaintiffs in this cause. The foregoing facts are true and correct to the best of my knowledge and belief, and I expect to prove the same on the trial.

*Error assigned* was the judgment of the court making absolute a rule for judgment for want of a sufficient affidavit of defense.

*John D. Blair*, for appellant.—The rule of caveat emptor should not prevail in this case: Zeigler's App., 35 Pa. 182; Crosson's Appeal, 125 Pa. 385; Love's Est., 4 Pa. Superior Ct.

561; McFadden's Est., 191 Pa. 624; Crooks v. Douglass, 56 Pa. 52; Ashmead v. McCarthur, 67 Pa. 329; Tospon v. Sipe, 116 Pa. 601.

*Harry A. McFadden,* for appellee.—Dower is an interest in land, an estate, not merely a lien: Schall's App., 40 Pa. 170; Gourley v. Kinley, 66 Pa. 270; Zeigler's App., 1 Chester Co. Rep. 515.

There was no contract in this case on the part of any one to discharge the dower, and no application was ever made by the appellant to the court to set aside the sale for failure of such a contract—for there was none—nor did he ever make such an application on any grounds. This plea was an afterthought of his or that of counsel, inspired doubtless, by the case of Mills v. Ritter, 197 Pa. 353.

The rule of caveat emptor applies with all its force to the sale made to the appellant. " The purchaser must see that all proceedings are regular and legal : " Bashore v. Whisler, 3 Watts, 490; Bickley v. Biddle, 33 Pa. 276 ; Vandever v. Baker, 13 Pa. 121; Mode's Appeal, 6 W. & S. 280 ; Fox v. Mensch, 3 W. & S. 445 ; Miles v. Diven, 6 Watts, 148 ; Nye & Schneider Co. v. Fahrenholz, 49 Neb. 276 ; Williamson v. Jones, 38 L. R. A. 694.

If a sale is regularly made, returned to the court, confirmed and deed delivered and accepted, the sale should be regarded as closed beyond the reach of the courts. The sale being confirmed the purchaser is deprived of all rights to defend against an action for the purchase money, no matter how worthless the title: Fox v. Mensch, 3 W. & S. 446 ; De Haven's Appeal, 106 Pa. 615.

A court of equity will not on mere ground of silence, relieve one who is perfectly acquainted with his rights, or has the means of becoming so, and yet wilfully undertakes to disregard the same. He acts at his peril : Knouff v. Thompson, 16 Pa. 364.

OPINION BY MR. JUSTICE MESTREZAT, May 19, 1902 :

This is a rule for judgment for want of a sufficient affidavit of defense. The court below made the rule absolute and entered judgment against the defendant. He appeals. The plaintiff is the assignee of Archibald McFadden who made

and delivered a deed of assignment for the benefit of his cred-
itors in 1877, but in which his wife did not join.  McFadden
died in 1887, intestate, leaving to survive him his widow and
three children.  The real estate of the assignor was sold by
his assignee on March 7, 1896, in pursuance of an order of the
court of common pleas of Blair county and the defendant,
through his agent, became the purchaser.  The sale was con-
firmed March 11, 1896, without objection by the purchaser and
a deed was delivered to him on April 2, 1896.  One third of
the purchase money was paid on confirmation of the sale and
the remaining two thirds were payable in one and two years
thereafter.  The last payment was secured by a mortgage given
by the purchaser to the assignee.  The second instalment
was paid into court.  The third and last instalment being due
and unpaid, the assignee issued a scire facias on the mortgage.
The defendant filed an affidavit of defense and denies the right
of the plaintiff to recover for the reasons therein set forth as
follows:  "On March 7, 1896, the assignee held his sale.  Be-
fore the auctioneer began crying the sale, notice was given
by Barbara McFadden that she was claiming a dower in the
farm.  Hon. A. S. Landis, who was the attorney for the as-
signee and who had entire charge of the sale, after the giving
of the dower notice, arose, and announced that bidders would
pay no attention to the dower notice as the purchaser would
receive a good title and free of all liens and incumbrances
whatsoever.  Both H. A. McFadden, executor of S. P. Mc-
Fadden, and the representative of said Brooke mortgage were
present when said notice and announcement were made, and
made no protest.  On the contrary, their conduct conclusively
showed that the understanding was that the purchaser was not
to pay for the dower in addition to his bid, but that he would
be protected.  Said H. A. McFadden became a competitor
with the purchaser, W. P. Smith, who was bidding for defend-
ant, and the farm was bid to $9,000 less $10.00, when the farm
was knocked down to defendant's agent."  In brief the defend-
ant denies his liability on the mortgage, because as stated in the
"question involved," misleading public announcements as to
the dower were made by the assignee at the public sale in the
presence of all the parties interested in the purchase money,
understood by all and relied on by the purchaser.

What is not set forth in an affidavit of defense is presumed not to exist and hence if the facts averred in the affidavit present a defense insufficient in law, the plaintiff is entitled to a summary judgment. The sale to the defendant in this action was a judicial sale, made in pursuance of an order of court and the facts disclosed by the affidavit do not take it out of the operation of the well settled rule of caveat emptor. The deed of Archibald McFadden to his assignee was duly recorded in 1877 and this was constructive notice to McLanahan, equally as effective as actual notice, that Mrs. McFadden's inchoate right of dower did not pass to the assignee. This deed was in the line of the purchaser's title and he is affected by what it discloses. Again on the day of the sale and before it began, "notice was given by Barbara McFadden that she was claiming dower in the farm." Her husband, the assignor, had then been dead several years, and her right to dower in the premises had become absolute. In addition, therefore, to the constructive notice which the deed to the assignor gave McLanahan of the widow's interest in the land, he had actual, positive notice that she still retained her interest and would assert her claim. With a full knowledge of all the facts he purchased the property. He therefore knew that his title was subject to the widow's dower interest and that she would enforce her claim against the land.

Notwithstanding his knowledge of all the facts which enabled him to bid intelligently, the appellant contends that he was misled and deceived by the announcement at the sale "that bidders would pay no attention to the dower notice as the purchaser would receive a good title and free of all liens and incumbrances whatsoever." It should be observed, however, that the appellant did not construe this notice as meaning that the widow had no dower interest in the land or that the sale would divest it. Relief is not sought here on either of those grounds but because (in the words of the appellant's counsel) "interpreting the language (of the announcement just quoted) rationally and in the light of his former practice, either he (the assignee) intended to purchase her dower as he had done in other instances, or allow the one third to remain, as he had also done before, without objection from anyone." But the language used by the counsel of the assignee at the sale does not

admit of the interpretation placed upon it by the appellant. It did not import an agreement by the assignee to deliver a title to the premises discharged of the widow's dower, nor was it a representation to bidders that the assignee would protect the purchaser from the widow's interest in the premises. The announcement followed immediately the notice given by the widow, and its only fair construction is that it was intended to be merely the opinion of the learned gentleman who made it that the sale by the assignee would divest the widow's interest in the land. At that time the legal profession of the state was divided in opinion on that question, which had not then been determined by this court. It cannot be presumed that Judge Landis, the able counsel of the assignee, intended by his statement to make his client personally responsible to the purchaser for the dower, if the sale did not divest it and the widow should refuse to release it. That, however, is the effect of the appellant's construction of the language used in the announcement. Of course, the assignee was not invested with the power to compel the widow to relinquish her interest in the land. Nor was he authorized in his official capacity to agree or consent that the appellant might deduct from the purchase money secured by the mortgage a sum sufficient to protect him against the dower. Neither did the order of court under which the sale was made nor its confirmation thereafter clothe him with such authority. This, however, as we understand, is not claimed by the appellant, but he rests the authority of the assignee to apply the instalment due on the mortgage in satisfaction of the dower on the fact that the creditors of the assignor were present at the sale and made no protest against the statement that the purchaser would receive a good title clear of incumbrances and on the further fact that the assignee presumably with the consent of the creditors had in former sales of real estate made such application of the purchase money. But the silence of the creditors cannot be construed into an agreement that the funds to which they are entitled should be applied by the assignee to this purpose. As has been observed, the assignee was not authorized by them to make such disposition of the purchase money. They were not bound to speak when the notice was given and hence their silence was not a fraud on the purchaser nor was it a deception which would work

an estoppel. It is not averred in the affidavit that the creditors said anything or did any positive act at the sale that would show their consent to the statement of Judge Landis or that they intended to obligate themselves to pay the dower by permitting the purchase money to be applied to that purpose. It is true that the affidavit alleges that " their conduct conclusively showed that the understanding was that the purchaser was not to pay for the dower in addition to his bid," but this allegation is too indefinite and uncertain and must therefore be disregarded. To avail the affiant, the affidavit must set out, not his conclusion of law or fact but, what the creditors said and did so that the court may determine the understanding of the parties as to what occurred at the sale and its legal effect.

As we have seen, the appellant knew before he bid at the sale that the premises were subject to the dower of Mrs. McFadden and that the purchaser would take them incumbered to that extent. He was therefore not deceived or misled as to the title or the incumbrance upon it. If he relied upon the assignee to satisfy the widow's claim upon the land, he must secure his redress from that source as a personal obligation if the promise has any validity. In his official capacity the assignee sold the land incumbered with the dower of which the appellant had full knowledge at the time he purchased, and the deed made in pursuance of the sale conveys only the title which the assignee held and which he sold. He has performed his duty officially and the appellant is in possession of, and has a good title to, what he purchased. He is therefore not now in a position to resist payment of the purchase money. The rule of caveat emptor applies. He gets what he knew the assignee had to sell and at the price bid by him. The rights of the assignor's creditors to the purchase money cannot be defeated by the mere expectation of the purchaser that an incumbrance known to the latter would in some way be removed by the assignee.

This is not an application by the purchaser to set aside a sale before its confirmation on the ground of a defective title, but it is an appeal to the equitable powers of the court, four years after the sale has been confirmed, the deed has been delivered and title has passed, to compel the assignee to apply part of the purchase money to the payment of an incumbrance of which

the purchaser was fully advised before he bid at the sale. If the appellant desired relief under the facts set forth in his affidavit, and which he fully knew at the time of the sale, he should have presented his application to the court granting the order of sale and before its confirmation. He would have been heard and relieved from the consequence of any deception practiced upon him or of any misrepresentations made by the assignee. This is the general rule applicable to judicial sales and the one that must be enforced in this case. The authorities to sustain it are cited in the opinion of the court below, approved by this court, in the very recent case of Fahrig v. Schimpff, 199 Pa. 423.

The facts of Leard's Estate, 164 Pa. 435, are very similar to those of the case in hand. That was an application by a successful bidder to set aside a sale before confirmation on the ground that the purchaser would have to pay a sum in addition to his bid at the assignee's sale before he could procure a complete title. A question arose at the sale as to the title and after a conference between the assignee's counsel and the assignor and his father who each owned a one-third interest in the premises, an "announcement was made that the title would be made good or the money paid refunded." After the sale the owner of the other one third declined to convey his interest to the purchaser. The court below refused to set aside the sale for the reason that the purchaser knew at the time of the sale that the title to the property was not wholly in the assignor but was in three parties. It was therefore held that he was not deceived by the statement made at the sale. This court affirmed the decree of the court below.

In the case in hand, the purchaser was cognizant of the facts and bid for the property with the knowledge that the dower of the widow had not been released and that she would assert her claim against the farm. The statement, therefore, at the sale did not deceive or mislead him as to the fact. His interpretation of the announcement directly in conflict with the facts which he knew, cannot now be interposed as a defense to the payment of the purchase money.

The decisions cited by the learned counsel for the appellant are not applicable to the facts of this case. It is true that at the proper time and under proper circumstances, the court will

relieve the purchaser at a judicial sale who had been misled and deceived to his injury: Leard's Estate, supra. The facts of this case stand in the way of enforcing that rule in this proceeding.

The assignments of error are overruled and the judgment is affirmed.